IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ERIC A. HEMION,

                            Plaintiff,

          vs.                                    Civil Action No.
                                                 3:05-CV-0674 (LEK/DEP)

MICHAEL J. ASTRUE, Commissioner of
Social Security,[1]

                            Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF:

HINMAN, HOWARD LAW FIRM              EUGENE G. FAUGHNAN, ESQ.
P.O. Box 5250
80 Exchange St.
700 Security Mutual Bldg.
Binghamton, NY 13902-5250

FOR DEFENDANT:

HON. GLENN T. SUDDABY               WILLIAM H. PEASE, ESQ.
United States Attorney              Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

          [1]        Plaintiff's complaint, which was filed on June 1, 2005, named Jo Anne B.
Barnhart, the former Commissioner of Social Security, as the defendant.  On February 12,
2007, Michael J. Astrue took office as Social Security Commissioner.  He has therefore
been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change.  *See* 42 U.S.C. § 405(g).

OFFICE OF GENERAL COUNSEL     BARBARA L. SPIVAK, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza
New York, New York 10278          SUSAN REISS, ESQ.
                                    Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Eric A. Hemion, who suffers from various medical conditions including, *inter alia,* chronic lower back pain, right shoulder pain and a seizure disorder, has commenced this proceeding pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to challenge the Commissioner's denial of his application for disability insurance benefits ("DIB") and supplemental security insurance ("SSI") benefits under the Act.  In support of his judicial challenge to that denial, plaintiff asserts that the agency's determination is not supported by substantial evidence, and that the findings of the administrative law judge ("ALJ") assigned to hear and determine the matter regarding his residual functional capacity ("RFC"), which served as the lynchpin for the ALJ's finding of no disability, are both unsupported and contradicted by treating source opinions which were improperly rejected by the ALJ.  Plaintiff further asserts that his complaints of disabling pain were wrongly discounted, and that the pain which he experiences represents a nonexertional impairment which the ALJ failed to consider in concluding that he is capable of performing his past relevant work, arguing further that the

ALJ should have elicited testimony from a vocational expert in order to assist in the disability determination.  As relief, plaintiff requests that the Commissioner's determination be set aside and the matter remanded to the agency, with a directed finding of disability, for the limited purpose of calculating benefits owed.

Having carefully reviewed the record which was before the agency, considered in light of plaintiff's arguments, and applying the requisite deferential standard, I find that the ALJ's finding of no disability resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, I recommend that the Commissioner's determination be affirmed, and plaintiff's complaint in this action be dismissed.

I.    BACKGROUND

Plaintiff was born in 1962; at the time of the administrative hearing, he was forty-one years old.  Administrative Transcript at 232, 248.[2]  Plaintiff has never been married, has no children, and lives together with his parents in a two-story house, located in Windsor, New York.  AT 232, 248-49.  Plaintiff stands five feet, seven inches in height, and weighs approximately two hundred pounds.  AT 248.

---

[2]     Portions of the administrative transcript filed by the Commissioner in the action, Dkt. No. 5, and comprised of proceedings and evidence before the agency, will be cited herein as "AT ___."

Plaintiff is a high school graduate, and additionally has taken some college courses, although without receiving any other relevant specialized training.  AT 249-50.  Plaintiff last worked on or about April 5, 1999 as a circuit board inspector for an electronics company, a position which he held for approximately twelve years before being laid off as the result of a company relocation.  AT 49, 66-68, 250-51.  Plaintiff's past relevant work also includes employment as a test operator and a hand assembler.  *Id.; see also* AT 18.

Over time, plaintiff has suffered from various physical conditions including, notably, a seizure disorder, a ruptured disc in his lower back, and right shoulder pain.  Plaintiff's lumbar back condition has been treated principally by Dr. Saeed A. Bajwa, a neurosurgeon.  AT 133-45.  On April 8, 1999, based upon his examination and treatment of the plaintiff, Dr. Bajwa noted a diagnosis of right L4 radiculopathy, secondary to a herniated lumbar disc at the right L4-5, and recommended that Hemion undergo surgery.  AT 134.  Plaintiff subsequently underwent an L4-5 laminectomy, a diskectomy and a nerve root decompression procedure on April 15, 1999 at United Health Services Hospital in Johnson City, New York.  AT 146-54. By all accounts that surgery was successful, *see* AT 255, and on July 29, 1999 Dr. Bajwa released the plaintiff to "full activity", with permission to seek new employment.  AT 138.

-4-

In addition to his back condition, plaintiff suffers the residual affects of a shoulder condition which required surgical intervention in the 1980's, and apparently has been more recently exacerbated including as a result of a fall during a seizure experienced on March 31, 2003.[3]  AT 207.  X-rays taken on April 11, 2003 revealed the presence of degenerative arthritis in plaintiff's right shoulder.  AT 197.  Plaintiff's shoulder condition has been treated principally by his general practitioner, Dr. Drake Lamen, who referred him to an orthopedist, Dr. Norman Krause, in May of 2003 for a consultation.  AT 207-08.  As a result of his examination, Dr. Krause discerned the existence of "obvious pain" and a distinct limitation in plaintiff's use and motion of that shoulder, and recommended a CT Arthrogram and, if permitted given the presence of staples dating back to his shoulder surgery, magnetic resonance imaging ("MRI") testing.[4]  *Id.*  While the records concerning the matter are rather sparse, it appears that plaintiff underwent arthroscopic surgery on his right shoulder on July 15, 2003.  AT 195.  The record is somewhat lacking in reports regarding plaintiff's shoulder condition following that surgery.

While in no way minimizing plaintiff's back and shoulder condition as

---

[3]     Plaintiff attributes the onset of his right shoulder injury to a fall during a seizure experienced in 1985, requiring surgical repair which was performed at the Binghamton General Hospital.  AT 176.

[4]     In his decision, ALJ Gale noted that "it does not appear that the claimant followed up with the MRI or even with a CT Scan . . . ."  AT 22.

well as various other complaints, it appears that the chief medical condition of concern in this matter is plaintiff's seizure disorder.[5]  Plaintiff was first diagnosed in 1967 with a generalized (grand mal) seizure disorder.  AT 176.  While plaintiff has never been hospitalized for his seizures, and at one point he went for a two year period while on Tegretol without experiencing any episodes, he suffered two seizures in July of 2002, and another on September 3, 2002.  AT 176.  Plaintiff's seizures last between three and five minutes, during which he remains unconscious, and are not preceded by any aura or other warning signs.  AT 176.

Plaintiff's seizure disorder has been treated primarily by Dr. Aamir Rasheed.  *See* AT 155-56, 215-17.  The first reference in the record of intervention by Dr. Rasheed is a letter dated January 19, 2000 reflecting that Hemion was seen by Dr. Rasheed on January 12, 2000.  AT 155.  In that letter to Dr. Marcelo A. Barreiro, Dr. Rasheed notes his impression that the plaintiff presents with a history of seizures "since childhood" with a "break through seizure" on January 11, 2000, with uncertain etiology.  *Id.*  Dr. Rasheed advised continued use of Tegretol, and indicated that he would see the plaintiff in six months.  *Id.*  Plaintiff was seen again by Dr. Rasheed on

---

[5]       There are several references in the record to a hearing impairment which ultimately resulted in plaintiff undergoing surgery to remove an inflamed polyp in his right ear canal.  *See*, *e.g.*, AT 209-10.   Plaintiff does not press this condition, however, in support of his claim of entitlement to Social Security benefits.

September 12, 2000, resulting in reported findings to the effect that plaintiff was "doing well" and that no changes in his medication regimen was warranted.  AT 156.

Plaintiff was again seen by Dr. Rasheed on June 11, 2003.  AT 215. On that occasion, plaintiff reported to Dr. Rasheed that he had not experienced any seizures since March of that year and, after being switched to brand name Tegretol, had done well.  *Id.*  On that basis Dr. Rasheed recommended no changes in plaintiff's medication.  *Id.*  Upon his return to Dr. Rasheed on January 21, 2004, however, plaintiff reported both an increased seizure frequency and his experiencing of intermittent staring spells.  AT 216. Based upon those reports and testing which revealed a recent carbamazepine level therapeutic at 9.3, Dr. Rasheed prescribed Keppra.  *Id.* Three months later, on April 21, 2004, plaintiff was again seen by Dr. Rasheed, who in his notes of that visit reported that "[plaintiff] has done well on the present regimen and as such no changes are contemplated.  I will see him again in six months and will keep you advised."  AT 217.

During the administrative hearing before the agency, plaintiff testified that in his belief he is capable of performing a job requiring only minimal lifting, provided that he is able to take breaks every half hour.  AT 255-57. Hemion also stated that he is able to lift and/or carry up to three pounds utilizing his right arm, and up to five or six pounds with the left, and that he

can use both for lifting up to ten pounds.  AT 261-62.  Plaintiff further stated

that while he does not drive, due to his seizures and the fact that they are not

preceded by auras, he is able to use public transportation.  AT 259-60, 264.

Plaintiff testified that his medication makes him somewhat drowsy.  AT 258,

265.  Plaintiff stated that despite his conditions he is able to read a

newspaper, watch television, set the table and do dishes, and that he has in

fact applied for jobs although at least one offer of employment has been

turned down because it involved rotating shifts.  AT 260-61.

II.     PROCEDURAL HISTORY

        A.      Proceedings Before The Agency

        Plaintiff filed applications for DIB and SSI benefits under the Act on July

11, 2002, alleging disability on the basis of epilepsy and a herniated disc and

asserting a disability onset date of April 5, 1999.[6]  AT 25, 43-45, 48, 232-35.

On August 12, 2004, following the denial of those applications in or about

October of 2002, AT 27, 236-40, a hearing was conducted before ALJ Robert

---

[6]      The plaintiff filed an earlier application for DIB with the agency on February
21, 2001.  AT 40-42.  Plaintiff did not pursue that application any further, however,
following its initial denial.  AT 26.  In his decision, ALJ Gale treated plaintiff's subsequent
filings as constituting a request to reopen the earlier adverse determination, concluding
that the record did not disclose any new evidence reflecting on his condition during the
period predating the adverse determinations, and thus denied the deemed application to
reopen.  AT 17-18.  Plaintiff does not challenge that portion of the ALJ's determination in
this action for judicial review of the agency's determination.

E. Gale, at plaintiff's request, to address the denial of his application for Social Security benefits.  *See* AT 241-71.  Following that hearing, ALJ Gale issued a written decision on November 17, 2004, based upon his *de novo* review of the available evidence, finding that plaintiff was not disabled at the relevant times, and thus not entitled to the benefits sought.  AT 17-23.

In his written decision, ALJ Gale applied the well-established and now familiar five step algorythm for determining disability, concluding at the outset that plaintiff had not engaged in substantial gainful activity since his alleged onset date.  AT 18-23.  After surveying the available medical evidence, ALJ Gale next concluded that plaintiff's various physical conditions, including his status post lumbar laminectomy and diskectomy, seizure disorder, degenerative arthritis, and limited range of motion in his right shoulder status post surgery, constituted impairments which in combination sufficiently restrict his ability to perform work related functions as to satisfy the modest requirement at step two of the disability calculus, but went on to conclude that they were not, either singly or in combination, sufficiently severe to meet or medically equal any of the listed, presumptively disabling conditions set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  AT 20.

Before proceeding to the next step, ALJ Gale canvassed the medical evidence in order to assess plaintiff's RFC.  Based upon that evidence, and rejecting plaintiff's subjective claims regarding his physical condition, and in

particular the extent and effects of his seizures, as "only partially credible", ALJ Gale concluded that plaintiff retains the RFC to lift and carry up to twenty pounds occasionally and ten pounds frequently, utilizing his left arm with availability of the right arm only to steady the load; is capable of standing for up to six hours, at two hour intervals, and to walk for four hours in one hour intervals, and to sit for six hours in an eight hour work day; can push/pull up to twenty pounds occasionally and ten pounds frequently, again using only the left arm; and must avoid climbing ladders or scaffolds or working at heights.  AT 21.  The ALJ additionally found that plaintiff is unable to lift more than three pounds with his right arm, should not engage in overhead reaching with the right arm, and should avoid working at heights or operating machinery.  *Id.*  Applying this RFC finding, ALJ Gale concluded that plaintiff is capable of performing his past relevant work as a circuit board inspector, and thus determined that a finding of no disability was warranted, finding it unnecessary to proceed to step five of the disability test, at which the burden of proof would shift to the Commissioner.  AT 21.  ALJ Gale's opinion finding no disability and denying plaintiff's application for DIB and SSI benefits became a final determination of the agency when, on May 4, 2005, plaintiff's request for review of that decision was rejected by the Social Security Administration Appeals Council.  AT 5-7.

     B.    <u>This Action</u>

Plaintiff commenced this action on June 1, 2005.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing on October 4, 2005 of an answer, accompanied by an administrative transcript of the proceedings and evidence before the agency.  Dkt. Nos. 4, 5.  With the submission of plaintiff's brief on December 23, 2005, Dkt. No. 7, and that on behalf of the Commissioner on January 26, 2006, Dkt. No. 8, this matter is now ripe for determination, and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P. 72(b).[7]

III.    <u>DISCUSSION</u>

    A.    <u>Scope of Review</u>

    A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is limited; that review requires a determination of whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel,* 134 F.3d

---

[7]    This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge, on January 28, 1998, and later amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001. Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, his decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone*, 70 F. Supp. 2d at 148. If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427; *Martone,* 70 F. Supp. 2d at 148 (citing *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at 235; *Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir. 1992); *Carroll v. Sec'y of Health and*

*Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983).

     B.    <u>Disability Determination - The Five Step Evaluation Process</u>

     The Social Security Act defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

     The agency has prescribed a five step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or

combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities. *Id.* §§ 404.1520(c), 416.920(c). If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations. *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1. If so, then the claimant is "presumptively disabled". *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work. *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728

F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

> C.     The Evidence In This Case

In support of his challenge to the ALJ's determination, plaintiff argues that 1) the finding of no disability is not buttressed by substantial evidence, since the ALJ's RFC assessment, upon which the determination hinges, is not well supported; 2) in arriving at his RFC determination and finding of no disability, the ALJ improperly rejected the contrary opinions of several of his treating physicians, including those of Dr. Lamen, Dr. Young and Dr. Krause; 3) in finding no disability the ALJ improperly discounted plaintiff's complaints of disabling pain and other limitations; and 4) the ALJ failed to take into consideration the nonexertional limitations associated with plaintiff's condition, and primarily his seizure disorder, in determining that he is capable of performing his past relevant work.

> 1.     RFC Finding

In his decision ALJ Gale made the following finding regarding plaintiff's RFC:

> 6.     The claimant remains able occasionally to lift/carry 20 pounds, 10 pounds frequently (with the left arm - using the right arm only to steady the load), stand for 6 hours, interrupted every 2 hours, walk for 4 hours, interrupted every hour, sit for 6 hours in an 8-hour work day, and push/pull 20 pounds occasionally, 10 pounds frequently (using the left arm only).  He cannot climb ladders or scaffolds or work at heights.

> The claimant has no manipulative limitations
> other than lifting over 3 pounds with the right
> arm, reaching overhead with the right arm, and
> working at heights or with operating machinery.

AT 23; *see also* AT 21.  Although bereft of specifics, plaintiff's memorandum

takes issue with that finding and asserts that he cannot fully meet these

requirements, which for the most part are congruent with the requirements of

light work.[8]

A claimant's RFC represents a finding of the range of tasks he or she is

capable of performing notwithstanding the impairments at issue.  20 C.F.R. §

404.1545(a).  An RFC determination is informed by consideration of a

claimant's physical abilities, mental abilities, symptomology, including pain,

---

[8]     By regulation, light work is defined as follows:

> Light work involves lifting no more than 20 pounds
> at a time with frequent lifting or carrying of objects
> weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this
> category when it requires a good deal of walking
> or standing, or when it involves sitting most of the
> time with some pushing and pulling of arm or leg
> controls.  To be considered capable of performing
> a full or wide range of light work, you must have
> the ability to do substantially all of these activities.
> If someone can do light work, we determine that
> he or she can also do sedentary work, unless
> there are additional limiting factors such as loss of
> fine dexterity or inability to sit for long periods of
> time.

20 C.F.R. § 404.1567(b).

-17-

and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull.  20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered.  20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e).  When making an RFC determination, an ALJ must specify those functions which the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice.  *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations.  *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

Although it is far from clear, it appears that the primary battleground associated with the ALJ's RFC determination concerns plaintiff's ability to lift, as well as the length of time that he is capable of sitting and the intervals at which he must change positions.  To be sure, there is some conflicting evidence in the record regarding these issues.  Plaintiff's physical therapist,

Todd Mansfield, has concluded that Hemion is capable of lifting and carrying

only ten pounds occasionally and three pounds frequently, and can only

stand and walk for four hours in an eight hour work day, with interruption at

thirty minute intervals, and further is able to sit for only four hours in an eight

hour work day, also with changes in position every thirty minutes.  AT 218-24.

At the request of plaintiff's counsel, Hemion's general practitioner, Dr. Daniel

Young, indicated his concurrence with the Mansfield assessment, although

without any elaboration.  AT 225-26.

    In his decision, the ALJ explained his reasoning for rejecting that

assessment, explaining that he had chosen instead to accord "considerable

weight" to the report of Dr. Rasheed, "some weight" to Dr. Krause's report,

and "considerable weight" to the RFC assessment of Dr. Henderson, an

examining orthopedist.  AT 22.  The mere fact that there is some slightly

contradictory evidence in the record does not undermine the ALJ's

determination, provided that his resolution of the conflict draws the support of

substantial evidence.  *Snead v. Commissioner of Soc. Sec.*, 473 F. Supp. 2d

437, 441 (S.D.N.Y. 2007) (finding that the ALJ's decision was supported by

substantial evidence despite one contradictory finding in the record) (citing

*Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (noting that an ALJ is

not required to "reconcile explicitly every conflicting shred of medical

testimony")).  Having reviewed those assessments, I find that they provide

ample support for the ALJ's RFC finding.

        2.   <u>Treating Physician</u>

     In an argument once again lacking in specifics, plaintiff asserts that in arriving at his findings ALJ Gale rejected contrary opinions of various of plaintiff's treating professionals, including Dr. Lamen, Dr. Young, Dr. Krause, Dr. Rasheed and Dr. Bajwa.

     Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[9]  Such opinions are not controlling, however, if contrary to other substantial evidence in the record, including the opinions of other medical experts.  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino*, 312 F.3d at 588.  Where

---

[9]    The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.  When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the Commissioner.  *Veino*, 312 F.3d at 588.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985-86; *Barnett*, 13 F. Supp. 2d at 316-17.

To the extent they have not already been addressed in this report, plaintiff's arguments regarding the RFC determination of physical therapist Mansfield and Dr. Young's apparent approval of that assessment, are easily dispensed with.  As a physical therapist, the opinions of Todd Mansfield, P.T. are not entitled to any special deference.  *See Diaz v. Shalala,* 59 F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater,* 937 F. Supp. 1083, 1091-92 (S.D.N.Y. 1996).  While it is true that Dr. Young apparently "signed on" to that

-21-

assessment, the ALJ was within his right to discount that alleged endorsement in light of Dr. Young's failure to list symptoms, signs and finding to support the assessment.  *See*, *e.g.*, *Lewis v. Commissioner of Soc. Sec.*, No. 00 CV 1225, 2005 WL 1899399, at *4-5 (N.D.N.Y. Aug. 2, 2005) (Sharpe, D.J.) (finding that the absence of specific functional findings from physician's report "significantly detracted from the weight of the doctor's opinion" and noting that the ALJ therefore was not required to accord it any greater weight than he did).

Plaintiff's arguments with respect to opinions of Dr. Krause are similarly lacking in merit.  At the outset, is not at all clear what portions, if any, of Dr. Krause's opinions were rejected by ALJ Gale.  Moreover, it is doubtful that the relationship between the claimant and Dr. Krause extended over a sufficient period of time, and with the requisite intensity, necessary to establish him as a treating source under the governing regulation.  *See*, *e.g.*, *Haug v. Apfel*, No. 99 CIV. 443, 2000 WL 178212, at *5 (S.D.N.Y. 2000) (affirming ALJ's failure to afford physician's opinion controlling weight in light of, *inter alia*, plaintiff's infrequent visits to that physician over the course of one year).

In contrast to Dr. Krause, Dr. Lamen undeniably qualifies as a treating source.  On November 14, 2002, Dr. Lamen completed an RFC assessment regarding the plaintiff.  AT 211-14.  While Dr. Lamen has found no impact

resulting from plaintiff's various conditions upon his ability to sit uninterrupted during an eight hour work day, he does conclude that plaintiff is limited to standing and walking between five and six hours in an eight hour workday, with interruptions at intervals of one and one-half hours.  AT 212.  These findings are fully consistent with the ALJ's RFC determination.  It is true that Dr. Lamen's lifting and carrying findings are slightly at odds with the ALJ's determination, in that Dr. Lamen concludes plaintiff is capable of lifting and carrying no more than ten pounds, with a maximum of eight pounds occasionally and five pounds frequently.  AT 211.  It is also true that in arriving at his determination, the ALJ failed to make reference to this RFC finding.  Nonetheless, the ALJ's RFC determination regarding plaintiff's ability to lift is supported by other substantial evidence in the record, including the findings of an examining consultant, Dr. Henderson as well as those of various of his other treating sources.

While not stating his basis for rejection of Dr. Lamen's opinions, ALJ Gale did signal his awareness of that conflicting determination, and indeed set forth its particulars in his decision.  *See* AT 20.  Under these circumstances, and since, as will be seen, Dr. Lamen's opinions are consistent with plaintiff's ability to perform his past relevant work as a circuit board inspector, any claim that his RFC findings and in particular the lifting component were improperly rejected by the ALJ without proper explanation is

-23-

in my view harmless, at best.

Plaintiff's reference to Dr. Bajwa's opinions is somewhat mystifying.  In his decision, ALJ Gale discussed Dr. Bajwa's treatment of plaintiff's lumbar back condition.  AT 18-19.  Dr. Bajwa's treatment notes reflect that plaintiff's back surgery was successful, with no post-surgical complications.  AT 136-37.  Based upon his post-surgical findings, Dr. Bajwa concluded that plaintiff had a good range of motion and was neurologically intact, and on July 29, 1999 noted that plaintiff could be "released to full activity and may look for work."  AT 138.  Dr. Bajwa's opinion therefore does not contradict the ALJ's finding of disability.

### 3.   Credibility

In his third argument in support of his challenge to the ALJ's determination, plaintiff argues that the ALJ rejected, with neither a sufficient basis nor proper explanation, plaintiff's subjective testimony regarding disabling pain and total inability to work.  Plaintiff's submits that this provides a basis for reversal of the Commissioner's determination.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d).  When examining the issue of pain, however, the ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979); *Martone*, 70 F. Supp. 2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain. *See Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984). In deciding how to exercise that discretion the ALJ must consider a variety of factors which ordinarily would be relevant on the issue of credibility in any context, including the claimant's credibility, his or her motivation, and the medical evidence in the record. *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)). In doing so, the ALJ must reach an independent judgment concerning the actual extent of pain suffered and its impact upon the claimant's ability to work. *Id.*

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment which one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[10] *Barnett*, 13 F. Supp. 2d at 316; *see also* 20 C.F.R. §§ 404.1529(a), 416.929(a). If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily

---

[10]      In the Act, Congress has specified that a claimant will not be viewed as disabled unless he or she supplies medical or other evidence establishing the existence of a medical impairment which would reasonably be expected to produce the pain or other symptoms alleged. 42 U.S.C. § 423(d)(5)(A).

activities; 2) location, duration, frequency and intensity of any symptoms; 3)

precipitating and aggravating factors; 4) type, dosage, effectiveness and side

effects of any medications taken; 5) other treatment received; and 6) other

measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi),

416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical

evidence, and any other factors deemed relevant, the ALJ may accept or

reject claimant's subjective testimony.  *Martone*, 70 F. Supp. 2d at 151; *see*

*also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is

rejected, however, the ALJ must explicitly state the basis for doing so with

sufficient particularity to enable a reviewing court to determine whether those

reasons for disbelief were legitimate, and whether the determination is

supported by substantial evidence.  *Martone*, 70 F. Supp. 2d at 151 (citing

*Brandon v. Bowen,* 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the

ALJ's findings are supported by substantial evidence, the decision to discount

subjective testimony may not be disturbed on court review.  *Aponte v.*

*Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that he does suffer from some degree of

discomfort as a result of his back condition.  The mere fact that he suffers

from discomfort, however, standing alone, does not automatically qualify him

as disabled, since "disability requires more than mere inability to work without

pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's rejection of plaintiff's lukewarm complaints of disabling pain was entirely appropriate.  During an examination conducted on March 9, 2001 by examining orthopedist Dr. Anthony Camino, plaintiff candidly acknowledged that his back condition "has markedly improved since the surgery" and that he "has very little or almost no back pain at the present time."  AT 161; *see also* AT 157.  During the hearing plaintiff testified that he experiences back pain only approximately one time per month.  AT 266-67.  By all accounts, plaintiff is able to walk, stand, sit and climb stairs without difficulty stemming from his back condition.  AT 158, 162.  Plaintiff's seizures similarly provide no basis to conclude that he is unable to work.  By all accounts, plaintiff's seizures have been well-controlled with medication.  AT 259.

Plaintiff has reported that he is extremely independent with his household chores and self-care, and engages in a significant range of activities including socializing with friends, going out, watching television, reading, and listening to the radio.  AT 158, 162, 177, 261.  Perhaps most significantly, by plaintiff's own account he is able to work.  Indeed, plaintiff testified that rather than leaving his last employment position due to his medical condition, he was "let go" when his employer relocated and his position was eliminated.  AT 250-54.  Plaintiff also testified to having engaged

-27-

in an effort since then to find substitute new employment, identifying the lack of availability of public transportation and his inability to accept "rotating shifts" as the biggest impediments to finding work.  AT 254, 264.

Based upon the foregoing, I conclude that the ALJ properly rejected plaintiff's subjective complaints of limitations precluding his ability to work, to the extent that any such limitations remain.

4.   Failure to Elicit Testimony from a Vocational Expert

In his determination, at step four of the sequential analysis the ALJ concluded that based upon his RFC findings and his own account of the requirements of the position, the plaintiff is able to perform his past relevant work.  Plaintiff challenges this determination, arguing that the testimony of a vocational expert should have been elicited.

At step four of the determination, plaintiff bears the burden of demonstrating his inability to perform any past relevant work.  *Perez*, 77 F.3d at 46.  When a finding is made at that stage of the analysis that this burden has not been met, the sequential analysis ends, and the ALJ is not required, as plaintiff seems to imply, to nonetheless give additional consideration to the plaintiff's circumstances at step five, either through resort to the medical-vocational guidelines (the "grid") set forth in the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 2, or through elicitation of testimony from a vocational expert.  *See Edwards v. Barnhart*, No. 06CV402, 2007 WL 708802, at *13 (D.

-28-

Conn. Mar. 5, 2007), *adopted*, No. 06CV402, Dkt. No. 18 (D. Conn. Mar. 28, 2007) (Droney, D.J. and Smith, M.J.).

By plaintiff's own account his past relevant work required occasional lifting generally of less than ten pounds, sitting for six hours or less, and standing and walking for no more than one hour.  AT 49, 79, 95, 252-53. Such statements from the plaintiff regarding his past relevant work were properly relied upon by the ALJ in determining a claimant's ability to return to that work.  *See* Social Security Ruling 96-4p, *available at* 1996 WL 374187 (S.S.A. July 2, 1996); *see also* 20 C.F.R. §§ 404.1569a, 416.969a.

In this instance, the ALJ's finding at step four of the disability catechism that plaintiff had failed to sustain his burden of proving an inability to perform his past relevant work was appropriate, thereby obviating the need to engage in a step five analysis, at which the burden would have shifted to the Commissioner.

IV.    <u>SUMMARY AND RECOMMENDATION</u>

_____The ALJ's determination that plaintiff is able to perform his past relevant work is well-supported by medical evidence in the record, as well as plaintiff's own testimony regarding the requirements of that work and the fact of his efforts to find alternative employment.  The ALJ's determination that the plaintiff is not disabled is therefore supported by substantial evidence and did not result from the improper rejection of any opinions of treating sources

regarding his RFC, to the extent that they may have been minimally inconsistent with the exertional requirements testified to by the plaintiff concerning his past relevant work.  Similarly, in finding no disability the ALJ properly rejected any suggestion by the plaintiff that the limitations stemming from his back, right shoulder, and seizure disorder conditions preclude his ability to perform his past relevant work. It is therefore hereby

RECOMMENDED that defendants' motion for judgment on the pleadings be GRANTED, the Commissioner's finding of no disability AFFIRMED, and plaintiff's complaint in this action DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      February 6, 2008
            Syracuse, NY



_____
David E. Peebles
U.S. Magistrate Judge